UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JOSEPH ROBERTS and JOSHUA NOVAK, individually and on behalf of all others similarly situated, | Civ. Case No.: 2:19-cv-366 |
| | JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| AAY Security LLC, | |
| Defendant. | |

**COLLECTIVE ACTION COMPLAINT**

Plaintiffs JOSEPH ROBERTS and JOSHUA NOVAK ("Plaintiffs"), individually and on behalf of all other similarly situated individuals, by and through undersigned counsel, states the following:

**INTRODUCTION**

1. Plaintiffs, current and former Security Guards and Supervisors employed by AAY Security LLC ("Defendant" or "AAY"), brings this action for unpaid overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* for work performed in excess of forty (40) hours during one or more workweeks for which they, and other similarly situated individuals, did not receive premium overtime pay at a rate of not less than one and one-half times their regular rate of pay for all hours worked.

**JURISDICTION AND VENUE**

2. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. §§ 201, *et seq*.

1

3. This Court also has subject-matter jurisdiction over Plaintiffs' Collective Action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

4. Upon information and belief, Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.

5. Defendant's employees, including Plaintiffs, engage in interstate commerce and therefore, they are also covered by the FLSA on an individual basis.

6. Venue is proper in the United States District Court, Southern District of Texas pursuant to 28 U.S.C. § 1391, because Defendant operates facilities in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

*Plaintiffs*

7. Plaintiff Joseph Roberts is an adult resident of Corpus Christi, Texas. Plaintiff Roberts was hired by Defendant to work at its client's Cheniere Energy Plant location in Texas in November 2018 at $20.00 per hour. He continues to work for Defendant to this day. Plaintiff Roberts' Consent to Sue is attached hereto as Exhibit A.

8. Plaintiff Joshua Novak is an adult resident of Corpus Christi, Texas. From approximately July 2018 to March 2019, Plaintiff was employed as a Security Guard and Supervisor working at Defendant's client's Cheniere Energy Plant location in Texas and was paid approximately $20.00 an hour upon hiring. Plaintiff Novak's rate of pay did not increase following his promotion to Supervisor. Plaintiff Novak's Consent to Sue is attached hereto as Exhibit B.

9. The Consents to Sue of Opt-in Plaintiffs Jonathan Berndt, Richard Morrisey, and Ross Wagner are attach hereto as Exhibit C-E.

*Defendant*

10. AAY is a foreign limited liability corporation authorized to do business in Texas. AAY's principal place of business in Texas is located at 4749 N. Twin City Highway, Suite 220, Port Arthur, Texas 77642. AAY's registered agent for purposes of service is located at Northwest Registered Agent LLC, 700 Lavaca, Suite 1401, Austin, Texas 78701.

11. According to its website, "AAY SECURITY IS A PORT ARTHUR, TX-BASED ARMED AND UNARMED SECURITY COMPANY THAT IS FOCUSED ON PROVIDING TOP-TIER, HIGHLY TRAINED, PROFESSIONAL SECURITY OFFICERS TO PETROCHEMICAL, REFINERY, AND MARITIME FACILITIES."[1]

12. Upon information and belief, at all times relevant, AAY's annual gross sales made or business done have been in excess of $500,000, and its employees engaged and continue to engage in commerce within the meaning the FLSA § 203(s)(1) by providing security services to refinery facilities in the United States.

## FACTUAL ALLEGATIONS

13. Plaintiffs and the similarly situated individuals were, or are, employed by Defendant as Security Guards and/or Supervisors.

14. The primary job duties of Defendant's Security Guards are to man a post at its client's facilities located at the Cheniere Energy Plant in Texas.

15. The primary job duties of Defendant's Supervisors are, in addition to occasionally manning a post, to refuel vehicles, conduct weekly training sessions, oversee the shift-change procedure, and insure Security Guards arrive to work and report to their posts on time.

---

[1] *See* https://www.aaysecurity.com/about-us.html (last visited, November 26, 2019).

16. Defendant classifies its Security Guards and Supervisors as non-exempt hourly workers.

***Off-the-Clock Work: Pre-September 2019***

17. Prior to September 2019, Defendant required all Security Guards to arrive at least 30 minutes before the start of their scheduled shift.

18. Upon information and belief, if Security Guards did not arrive early as required, they would receive a telephone call and/or text message inquiring as to where they were and when they would be arriving to work.

19. Prior to September 2019, Defendant required all Supervisors to arrive at least 45 minutes before the start of their scheduled shift.

20. Defendant operated two shifts 7 days per week: 6 a.m. to 6 p.m. and 6 p.m. to 6 a.m.

21. Plaintiffs worked 3.5 days "on" followed by 3.5 days "off." In other words, Plaintiffs would work 3 12-hour days followed by 1 6-hour day, per week. Plaintiffs had the ability to, and often did, work extra shifts during each workweek.

22. Defendant maintained a "log book" each Plaintiff would sign when arriving to work each morning. However, regardless of what time Plaintiffs actually arrived, they were only paid from 6 a.m. to 6 p.m. (if they were on the day shift), or 6 p.m. to 6 a.m. (if they were on the night shift). While Plaintiffs initially would write the time they actually arrived to work before their shift (i.e., 30 minutes prior to the start of their scheduled shift), Defendant objected and required Plaintiffs to write their actual shift start time instead of the actual time they arrived in the log book. Several Plaintiffs, conscious of what Defendant was trying to do, objected to this process and continued to log the time they actually arrived.

4

23. When Security Guards arrived to worked 30 minutes before the start of their scheduled shift, they would often immediately be dispatched to their post to begin the shift-change procedure and man their post for the day. Plaintiffs were not compensated for this time and, in fact, did not begin being compensated until 6 a.m. or 6 p.m. (depending on their shift start time)—regardless of when they actually started working prior to their shift. The same was true on half-day shifts.

24. Similarly, Supervisors were required to arrive at least 45 minutes early before the start of their scheduled shift. Like the Security Guards, they were only paid for hours worked between 6 a.m. to 6 p.m. (for the day shift) or 6 p.m. to 6 a.m. (for the night shift). The same was true on half-day shifts.

25. Defendant did not offer breaks or meal breaks for its Security Guards and Supervisors.

26. At the end of their shift, Plaintiffs regularly spent upwards of 30 minutes conducting the shift-change procedure with the next shift, and would then travel back to the Guard Shack in Defendant's vehicles. While the Cheniere Energy Plant only has one location where Plaintiffs worked, it is a large enough complex that traveling back to the Guard Shack can take upwards of 20 minutes.

27. Beginning in September 2019, Defendant changed its clock-in procedure by requiring biometric scanning at least 5-minutes before Plaintiffs' scheduled start time.

28. Regardless of the new pre-shift biometric scanning procedure, Plaintiffs are still required to spend upwards of 30 minutes at the end of their shift completing the shift-change procedure followed by traveling back to the Guard Shack in Defendant's vehicles.

29. Regardless of what time Plaintiffs returned to the Guard Shack, Plaintiffs were only paid until 6 p.m. (for day shift workers), or 6 a.m. (for night shift workers). The same was true on Plaintiffs' half-day shifts.

30. The resulting off-the-clock work meant Plaintiffs worked without compensation for approximately 1 hour per day. Because Plaintiffs routinely worked more than 40 hours per week, Defendant's refusal to compensate Plaintiffs for their pre- and post-shift work denied Plaintiffs premium overtime pay at a rate of not less than one and one-half times their regular rate of pay.

31. As a sophisticated employer, Defendant was, or should have been aware that Plaintiffs performed work that required payment of premium overtime pay at a rate of not less than one and one-half times their regular rate of pay.

32. Defendant's conduct was willful and not in good faith, and caused significant damages to Plaintiffs and the other similarly situated individuals.

*Unpaid Training Time*

33. Defendant conducts mandatory, pre-shift training for all Security Guards and Supervisors.

34. Pre-shift training generally occurs on Thursdays and lasts 30 minutes. In total, Plaintiffs attend 1 hour of training per pay period.

35. According to Defendant's Employee Handbook, Plaintiffs are paid a lesser rate of $15 per hour for attending training; however, training time is not actually paid in addition to Plaintiff's regular hours worked.

36. Rather than pay Plaintiffs an additional hour of work for training time at $15 per hour, Defendant deducts 1 hour from Plaintiffs' regular hours worked at $20 per hour and substitutes in 1 hour of training time at $15 per hour. The pre-shift meeting occurs before

Plaintiffs'' regularly scheduled shift, yet Defendant removes an hour of wages from Plaintiffs' regularly scheduled shift, thus denying Plaintiffs 1 hour of earned wages per week. *See Exemplar Pay Stub* attached hereto as Exhibit F. Because Plaintiffs routinely worked more than 40 hours per week, Defendant's refusal to correctly compensate Plaintiffs for their pre-shift training denied Plaintiffs premium overtime pay at a rate of not less than one and one-half times their regular rate of pay.

37. Defendant's conduct was willful and not in good faith, resulting in Plaintiffs losing an additional hour of earned wages each pay period.

*Recordkeeping*

38. 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

39. The employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

40. Upon information and belief, Defendant failed to establish, maintain and preserve accurate timesheet and payroll records as required by the FLSA.

41. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court

>     may then award damages to the employee, even though the result be
>     only approximate.

42. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

43. Plaintiffs, individually and on behalf of all other similarly situated individuals, re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

44. Plaintiffs bring this action individually and on behalf of all other similarly situated individuals pursuant to the FLSA, 29 U.S.C. § 216(b). The proposed collective class is defined as follows:

> *All current and former Security Guards and/or Supervisors employed by AAY Security LLC, who were not paid for their pre-shift and post-shift work, including mandatory weekly training, at any time in the last three years.*

45. During the applicable statutory period, Plaintiffs and the FLSA Collective routinely worked in excess of forty (40) hours per workweek without receiving premium overtime pay at a rate of not less than one and one-half times their regular rate of pay for their pre-shift and post-shift work, and their required weekly training.

46. Defendant willfully engaged in a pattern of violating the FLSA, as described in this Complaint in ways including, but not limited to, routinely suffering or permitting Plaintiffs and the FLSA Collective to arrive at least 30 minutes prior to the start of their scheduled shift and continue working up to 30 minutes at the end of their scheduled shift, without compensation, and

by deducting the pre-shift training time form their actual time worked—both violations resulting in Plaintiffs and the FLSA Collective not receiving premium overtime pay at a rate of not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

47. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

48. Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the FLSA Collective.

49. Upon information and belief, there are numerous other similarly situated current and former employees of Defendant, who have been subjected to Defendant's illegal conduct resulting in the denial of premium overtime pay in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

## COUNT I

**FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.***

50. Plaintiffs, individually and on behalf of all other similarly situated individuals, re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

51. Defendant is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

52. Plaintiffs and the FLSA Collective are, or were, employees of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e), (g).

53. Plaintiffs and the FLSA collective are non-exempt employees under the FLSA, and are entitled to its protections.

54. The FLSA, 29 U.S.C. § 207, requires covered employers to pay non-exempt employees premium overtime pay at a rate of not less than one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

55. Defendant suffered or permitted Plaintiffs and the FLSA Collective to work in excess of forty (40) hours per workweek without proper overtime pay at a rate of not less than one and one-half times their regular rate of pay for all overtime hours actually worked.

56. Defendant's actions, policies and practices described herein violates the FLSA's overtime pay provisions by regularly and repeatedly failing to compensate Plaintiffs and the FLSA Collective at the required overtime pay rate for all overtime hours actually worked.

57. Plaintiffs and the FLSA Collective have been subject to the same uniform company-wide practice which operates to deny them proper overtime pay.

58. Defendant knew, or showed reckless disregard for the fact that it failed to pay Plaintiffs and the FLSA Collective proper overtime wages for all overtime hours actually worked.

59. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the FLSA, 29 U.S.C. § 255(a).

60. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and the FLSA Collective suffered and will continue to suffer loss of income and other damages.

61. Plaintiffs and the FLSA Collective seek damages in the amount of their unpaid overtime wages from three years immediately preceding the filing of this action, an equal amount in liquidated damages, interest, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and § 255(a), and such other legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated individuals who join in this action, pray for the following relief:

a. Designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective apprising them of the pendency of this action, and permitting them to assert FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b. Judgment against Defendant for violating the overtime pay provisions of the FLSA;

c. Judgment that Defendant acted willfully in violating the FLSA;

d. Judgment against Defendant for an amount equal to Plaintiffs' and the FLSA Collective's unpaid overtime wages owed at the applicable premium overtime rate calculated at one and one-half times the regular rate of pay and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

e. For an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

f. An award of pre- and post-judgment interest;

g. Leave to add additional plaintiffs by motion, the filing of written Consent to Sue forms, or any other method approved by the Court;

h. Leave to amend to add claims under applicable federal and state laws; and

i. For such other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

A jury trial is demanded on all claims so triable in this action.

Respectfully submitted,

                                      PHIPPS DEACON PURNELL PLLC

Date: December 5, 2019                /s/ *Martin J. Phipps*
MARTIN J. PHIPPS
State Bar No. 00791444
BARRY DEACON
State Bar No. 24096725
**PHIPPS DEACON PURNELL PLLC**
The Phipps 102 9th Street
San Antonio, Texas
78215 Telephone:
(210) 340-9877
Facsimile: (210) 340-9899
Email: mphipps@phppsdeaconpurnell.com
       bdeacon@phippsdeaconpurnell.com

*Local Counsel for Plaintiffs*

Jacob R. Rusch (MN Bar No. 391892)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: jrusch@Johnsonbecker.com

*Trial Counsel for Plaintiffs*
**motion for pro hac vice admission forthcoming*